PHILO B. MILES *et al.*

*v.*

ROBERT B. ANDREWS *et al.*

*Filed at Springfield October 30, 1894.*

1. AGENCY—*how far statements of an agent are binding.*  Where it does not appear that an agent employed to procure signatures to notes was limited as to the means he should employ, all such agent said and did in accomplishing the purpose is competent, and, if material to the validity of the notes, binding on the principal.

2. EVIDENCE—*of conversation by telephone, competent.*  It is not error to permit a bystander in a telephone office to testify to the part heard by him of a conversation by telephone, such conversation being shown *aliunde* to have been between parties to a suit, and upon the subject matter thereof.

3. CONTRACTS—*intention to perform, a necessary element.*  Intention to perform on the part of at least one of the contracting parties is necessary to render a contract valid, and where neither intends to perform there can be no breach.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Tazewell county; the Hon. NATHANIEL W. GREEN, Judge, presiding.

Messrs. Jack & Tichenor, for the appellants :

When it appears that a broker has advanced money for his principal at his request, it will never be inferred that the agent knew his principal intended to make illegal use of it. The cases all hold the gambler to strong affirmative proof that his broker had knowledge of his illegal intent. *Pixley* v. *Boynton,* 79 Ill. 351; *Benson* v. *Morgan,* 26 Ill. App. 22; *Rumsey* v. *Berry,* 65 Me. 570; *Roundtree* v. *Smith,* 108 U. S. 269; *Irwin* v. *Williar,* 110 id. 499; *Bartlett* v. *Smith,* 4 McCrary, 388; *Bangs* v. *Hornick,* 30 Fed. Rep. 97; *Clarke* v. *Foss,* 7 Biss. 540; *Clay* v. *Allen,* 63 Miss. 426; *Lehman* v. *Strasburger,* 2 Woods, 554; *Gregory* v. *Wendell,* 40 Mich. 432; *Wall* v. *Schneider,* 59 Wis. 352; *Murry* v. *Ochiltree,* 59 Iowa, 435.

To the same effect as the foregoing cases are the following cases in the Federal courts, arising in Chicago, governed by the laws of this State, and following the decisions of our court : *Clarke* v. *Foss,* 7 Biss. 548; *Gilbert* v. *Gauger,* 8 id. 548; *Jackson* v. *Foote,* 12 Fed. Rep. 37; *Bartlett* v. *Smith,* 13 id. 263 ; *Kirkpatrick* v. *Adams,* 20 id. 287; *Bangs* v. *Hornick,* 30 id. 97; *Ward* v. *Vosburgh,* 31 id. 12 ; *Lehman* v. *Feld,* 37 id. 852 ; *Irwin* v. *Williar,* 110 U. S. 499 ; *Roundtree* v. *Smith,* 108 id. 269.

When a contract for future delivery is valid in its inception, and not tainted with any gambling intent, the mere fact that at the time of its fulfillment, instead of delivering and receiving the article according to the terms of the contract, one of the parties makes default, and thereupon the parties settle on the basis of actual differences in the contract price and the market value at the time of the breach, does not render the contract void, as a gambling contract. *Brau's Appeal,* 55 Pa. St. 294; *Smith* v. *Bouvier,* 70 id. 325 ; *Clarke* v. *Foss,* 7 Biss. 540; *Gilbert* v. *Gauger,* 8 id. 214; *Williar* v. *Irwin,* 11 id. 57; *Sawyer* v. *Taggart,* 14 Bush, 727.

It has been repeatedly held that where the only option the seller has is as to the precise time of delivery, and

the legal effect of the agreement is that the delivery must be made within a limited period, the contract is not thereby rendered illegal. *Pixley* v. *Boynton*, 79 Ill. 353; *Logan* v. *Musick*, 81 id. 415; *Bigelow* v. *Benedict*, 70 N. Y. 204; *Story* v. *Solomon*, 71 id. 420; *Harris* v. *Tumbridge*, 83 id. 99.

Mr. B. S. PRETTYMAN, Mr. J. V. GRAFF, and Mr. T. N. GREEN, for the appellees:

Where there is a conflict in the weight of the evidence, the jury are best qualified to pass upon its weight and find the facts. *Lowe* v. *Ravens*, 21 Ill. App. 631; *Bishop* v. *Busse*, 69 Ill. 405.

A verdict will not be set aside where the evidence is conflicting, even though it may be against the weight of evidence. *Morgan* v. *Ryerson*, 20 Ill. 343; *Railway Co.* v. *McKean*, 40 id. 229; *O'Brien* v. *Palmer*, 49 id. 72; *Packet Co.* v. *Henry*, 50 id. 269; *Bishop* v. *Busse*, 69 id. 403.

Evidence of prior conversation is admissible to prove an oral contract to be a gambling contract. *Wilson* v. *Roots*, 119 Ill. 379; *Brand* v. *Henderson*, 107 id. 145; *Hewitt* v. *Dement*, 57 id. 507.

In support of the instructions given see the following: *Pickering* v. *Cease*, 79 Ill. 328; *Schneider* v. *Turner*, 130 id. 36; *Samuels* v. *Oliver*, id. 76; *Lyon* v. *Culbertson*, 83 id. 33; *Kreigh* v. *Sherman*, 105 id. 51; *Brand* v. *Henderson*, 107 id. 142; *Pearce* v. *Foote*, 113 id. 228; *Cothran* v. *Ellis*, 125 id. 501; *Tenney* v. *Foote*, 95 id. 108; *Webster* v. *Sturges*, 7 Ill. App. 560; *Beveridge* v. *Hewitt*, 8 id. 467; *Bank* v. *Spaids*, id. 549; *Griswold* v. *Grigg*, 24 id. 387; *Carroll* v. *Holmes*, id. 453.

Mr. JUSTICE BAKER delivered the opinion of the court:

This was an action of assumpsit, by appellants, against appellees, upon three promissory notes. The declaration contained three special counts, each describing one of the notes in suit, and also the common counts. The defendants filed two special pleas: First, that the notes were

given without any good or valuable consideration ; and second, that the sole and only consideration upon which they were executed was for money won by plaintiffs from defendant Robert B. Andrews in a certain speculation on the market price of grain, and defendant Wells Andrews signed the notes as surety.   On the trial the jury found for the defendants, and judgment was rendered on the verdict.   Appellants appealed to the Appellate Court, where that judgment was affirmed.   A reversal is urged here upon the ground that the trial court admitted improper evidence, and gave improper instructions to the jury on behalf of the defendants.

The facts, as shown by the record, are substantially as follows :   The transactions out of which the giving of the notes resulted were a series of purchases and sales of wheat on the Chicago Board of Trade, for future delivery, by Milmine, Bodman & Co., members of the board, for appellants, who were brokers for Robert B. Andrews. These transactions were begun in December, 1885, and continued until August, 1888, during which time some twelve purchases and as many sales were made.   No wheat was delivered, or intended to be delivered, in any of the transactions.   The result of each transaction was entered on the books of appellants, and a statement thereof sent to Robert B. Andrews as soon as the deal was closed.   The losses amounted to about $3000.   Before and during the time of these purchases and sales, Robert B. Andrews was engaged in buying and selling grain at Washington, Tazewell county, and sold and delivered grain to appellants, who were carrying on the same business in the city of Peoria, and at the time the first two notes in suit were made he claimed about $450 from them on account of grain so previously sold and delivered, and for which he had drawn on them, the draft having been dishonored.   On October 18, 1886, the two notes for $1000 each, due in one and two years, bearing eight per cent interest, were sent by appellants to Robert

B. Andrews, with the request that he sign and procure security on them to cover losses to that time. They were not executed until the following December, when John Wren, residing in Washington, a brother-in-law of Philo B. Miles, (one of the appellants,) at the latter's request, called upon appellees and procured their execution and delivery. The other note was executed on or after June 20, 1887, to cover losses to that date.

On the trial, Wells Andrews, one of appellees, was asked to state what Wren said to the defendants at the time he called on them for the notes, and answered : "He and my son were talking together. He says, 'Bob, you had better sign these notes. It is the best thing you can do. The prospect is very flattering. I am a great bull on wheat. Before the deal will come around I shouldn't be surprised if it would go out of sight.' We then went into the office, and I asked him, 'How do the boys feel about this wheat?' His answer was, 'They are bullish on wheat,' or firm, or something of that kind. After the notes were signed he said, 'Bob, I will see that that draft is all right.'" Appellants insist that this testimony was incompetent, and that the trial court erred in overruling their objection to the same,—the statement about the draft, because made after the notes were signed, and the others because Wren had no authority from appellants to make them. We find nothing in the evidence to show that his authority was limited as to the use of means to procure the notes for appellants, and therefore all he said and did in accomplishing that purpose was competent, and, if material to the validity of the notes, binding on them. Charles C. Miles in his evidence states that he authorized Wren to say to Robert B. Andrews that if he would send them the notes they would honor his draft for $450, and this testimony is a sufficient answer to the objection to that part of the testimony relating to the draft.

Wells Andrews also testified : "Prior to signing these notes my son had asked me to sign them. My son and I then went to the telephone office together, and then Robert went to the telephone and called for P. B. and C. C. Miles, and they rang, and he says, 'Philo, is that you?' Did not hear the answer. Then Robert said, 'I have been down to see uncle Johnny to go on the notes, and he said he had got sick and tired of gambling in these options, and would not go on the note, but father would,' and then turned around and said, 'Philo says it is all right.'" The witness did not hear the answers, and did not of his own knowledge know that Robert was at the time talking to Philo, if to any one. Counsel for appellants insist that this testimony was incompetent. Robert Andrews testified that he talked to Philo B. Miles at the time spoken of by his father. The conversation being thus shown to have been between two of the parties to the suit, and upon the subject matter of the litigation, was, we think, competent, though perhaps entitled to little weight.

Numerous instructions were given on either side. Of those given at the request of the plaintiffs, six were devoted to a statement of the law as to valid contracts for the future delivery of grain, and of those given on behalf of defendants, seven stated what in law would amount to an option or illegal sale. All these instructions being considered together, they fully and fairly informed the jury as to the law of the case on the question as to whether the contracts in question were valid, or mere options, and therefore void.

Counsel for appellants, speaking of the first instruction on behalf of defendants, say: "If this properly defines an illegal contract for future delivery, then every unexecuted contract of purchase for future delivery is illegal; that power to make a contract involves power to unmake it, to cancel it, to compromise it, to arbitrate it, and to settle it by the payment of damages," etc. This position, applied to the facts of this case as found below,

is not tenable. It ignores the fact that in every valid contract there is an intention on the part of at least one of the contracting parties to fulfill its obligations,—comply with all its requirements. Here the finding is, that it was not intended that the contracts should be performed. A contract is not performed except by having its requirements executed. If one of the parties is unable or unwilling to fulfill its terms, damages for the breach may be recovered, but where neither of the parties intends to carry out its provisions there can be no breach.

We have given attention to each of the objections urged to the instructions objected to, and find no substantial error in either of said instructions. We think the errors assigned on them were properly disposed of by the Appellate Court, as shown by the opinion of PLEASANTS, J., and we concur in the views there expressed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*