JOSEPHINE ROMANA *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   November 16, 17, 1916. — May 23, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Practice, Civil,* Verdict, Exceptions, Conduct of trial, Judge's charge. *Res Judicata. Negligence,* Toward trespasser, Wilful, wanton and reckless conduct. *Electricity. Wires. Evidence,* Opinion.

In an action for personal injuries sustained from a shock of electricity when the plaintiff was walking along a path on the land of the defendant and came in contact with loose wires on the ground and an iron pole, both dangerously

charged with electricity, the declaration contained two counts, the first count alleging ordinary negligence and the second count alleging "wilful, wanton and reckless negligence" for which the defendant would be liable even though the plaintiff was a trespasser. With the consent of the plaintiff a verdict was ordered for the defendant on the first count, and thereafter the defendant contended that the verdict for it on the first count entitled it as matter of law to a verdict in its favor on the second count. *Held,* that there was nothing in the contention, the two counts being in the same declaration and there being no question of *res judicata.*

In the same case it was *held* that a contention of the defendant that the plaintiff had conceded that she could not recover without showing that some one for whom the defendant was responsible actually had intended to injure the plaintiff was wholly without foundation.

In an action against a street railway corporation for personal injuries sustained by the plaintiff, when ten years of age, by coming in contact with loose wires and an iron pole both dangerously charged with electricity while walking along a path on the defendant's land near a car barn of the defendant, there was evidence that before the accident a car shifter employed in the defendant's car barn had been told that the defendant's iron pole had become charged with electricity, that he knew that persons would be likely to be in the vicinity of the pole, that he knew that wire or similar objects had been dumped on a bank close to the pole, that he knew that persons in the vicinity of the pole would be likely to suffer grievous bodily injury by reason of the leaking of electricity with which the pole was charged and that it was his duty to report this condition of things to his superior officer. There also was evidence that for a long time before the accident children and other persons living in the vicinity of the defendant's car barn, without the defendant's permission but with the knowledge of its division superintendent and of some other persons employed in its car barn, had used the path used by the plaintiff at the time of the accident, and that the defendant's car shifter mentioned above had been continually about the premises so that he ought to have anticipated that many persons, including those who admitted that they were trespassers, would use the path. *Held,* that on this evidence a finding was warranted that the failure of the defendant's car shifter to report the dangerous condition of things to his superior officer was reckless and wanton conduct or negligence for which the defendant was liable to the plaintiff although a trespasser.

In the same case it was *held* that, in answer to special questions put to them by the judge, findings of the jury were warranted to the effect that before the accident the defendant's car shifter was informed that the iron pole at or near which the plaintiff was injured was charged with electricity and that the electricity was leaking or escaping therefrom, and that the car shifter before the accident believed that the pole was in a dangerous condition.

In the same case it was contended by the defendant that there was no evidence that the defendant's car shifter was in charge of the car barn, but it was *held,* that, if such evidence was not presented, its absence was immaterial, there having been ample evidence of the material fact that it was the duty of the car shifter, in case a dangerous condition came to his knowledge, to report it to his superior officer.

Where, after the judge's charge to the jury at the trial of an action at law, the defendant's counsel called the judge's attention to an objection which he previously had made to a certain part of the argument of the plaintiff's counsel,

which was unwarranted by the evidence, and asked the judge to instruct the jury to disregard that portion of the argument, and where, although the judge in his charge had not referred specifically to the portion of the plaintiff's argument objected to, he had covered the point fully in his charge by instructing the jury correctly in regard to it and refused to give further instructions on the subject, it was *held* that the defendant had no ground for exception, as he was not entitled to have the particular point to which the erroneous argument related specifically called to the attention of the jury at that stage of the trial.

In the case described above one of the witnesses, who had testified on his direct examination that he had told the defendant's car shifter that the iron pole was charged with electricity, was asked on his cross-examination by the defendant's counsel what the car shifter said to him at that time and answered that the car shifter said, "Get out of here; you are crazy." The defendant's counsel then asked the witness, "Do you mean he did not believe you?", to which the witness answered, "Yes." On the objection of the plaintiff this last answer was stricken out, subject to the defendant's exception. *Held*, that the answer was stricken out properly, as it stated merely the inference that was drawn by the witness from the words of the car shifter already in evidence.

TORT for personal injuries sustained at about half past four o'clock in the afternoon of September 1, 1909, when the plaintiff, who was a child ten years of age, was walking along a path on land of the defendant near its car barn on Eagle Street in the part of Boston called East Boston, by coming in contact with some loose wire lying on the ground and falling against an iron pole, both the pole and the wire being dangerously charged with electricity. Writ dated December 6, 1909.

The two counts of the declaration are described in the opinion.

In the Superior Court the case first was tried before *Wait*, J. The jury returned a verdict for the plaintiff in the sum of $10,000; and the defendant alleged exceptions, which were sustained by this court in a decision reported in 218 Mass. 76.

The case was tried again before *Dana*, J. The course of the trial is described in the opinion. The jury returned a verdict for the plaintiff in the sum of $16,500, afterwards reduced to $15,000; and the defendant alleged exceptions, which are dealt with in the opinion by taking up the contentions set forth in the defendant's brief.

*W. G. Thompson*, (*G. E. Mears* with him,) for the defendant.

*R. O. Harris*, (*F. J. Daggett* with him,) for the plaintiff.

LORING, J. The exceptions now before us were taken at the new trial consequent upon the decision in *Romana* v. *Boston Elevated Railway*, 218 Mass. 76.

The course of the second trial differed from that pursued at the first trial in more ways than one. At the second trial the plaintiff put her case on the footing that she was a trespasser and she undertook to charge the defendant with liability not on the ground that Sullivan was in charge of the car barn but on the ground that it was his duty to report the leakage of electricity to his superior officer.

With these changes the case presented at the second trial was in substance this: The plaintiff received an electric shock from a heap of hay wire or wires of that nature while she was going toward the flats which lay back of the defendant's car barn along a path just outside of the fence surrounding the defendant's yard. This heap of wire lay in close proximity to or was attached to an iron pole or post belonging to the defendant; attached to this iron pole or post was a wire connected with the wires which carried the electric current used by the defendant in furnishing its cars with power. Through a defect in insulation the defendant's electric current had been carried to this iron pole or post. In this way this iron pole or post had been charged with electricity and the electricity with which the pole or post had been charged had escaped into the hay wire; the electricity with which the hay wire had been thus charged had given the plaintiff the shock of which she complained in this action. At the trial no question was made: (1) as to the plaintiff having suffered an electric shock; (2) as to the iron pole or post having been charged with the defendant's electricity; and (3) as to the pole having been charged with electricity by reason of defective insulation in the defendant's wires. The defendant's main contention was that one of the hay wires had been attached to the pole or post in question by a third person and that the hay wires had become charged with the leaking electricity in this way. If these were the facts of the case the defendant was not liable. The plaintiff's contention was that the electricity with which the pole had thus become charged found its way to the wire through water on the earth or through earth which was wet. And there was evidence that it might have been conveyed to the heap of wire in either of these two ways.

The exceptions taken by the defendant are very numerous and many of them have been waived. In discussing them we follow the defendant's brief.

1. The declaration contained two counts. The first count was for ordinary negligence; the second count was for "wilful, wanton and reckless negligence of the defendant company, its agents or servants." On the second day of the trial the presiding judge directed the jury to find a verdict for the defendant on the first count and to this the counsel for the plaintiff consented. The defendant then contended that the verdict in its favor upon the first count entitled it as matter of law to a verdict in its favor on the second count. In support of this contention it has relied upon the case of *Cotter* v. *Boston & Northern Street Railway,* 190 Mass. 302. Nothing can be found in that case to support this contention. That case was decided upon the doctrine of *res judicata.* In that case before bringing the action then before the court the plaintiff had brought an earlier action against the same defendant. In the earlier action he had declared on ordinary negligence; in the later action (before the court in 190 Mass. 302) he counted on wilful negligence and wanton and reckless conduct on the part of the defendant, its agents and servants. It was held by this court that the former judgment was "a bar not only on all the issues actually tried, but on all which might have been tried in it" on the authority (*inter alia*) of *Foye* v. *Patch,* 132 Mass. 105, and *Clare* v. *New York & New England Railroad,* 172 Mass. 211. *Foye* v. *Patch* is authority for the proposition that a former action is a bar not only on the issue tried but on all the issues which might have been tried and *Clare* v. *New York & New England Railroad* is authority for the proposition that in such a case as that then before the court (and in a case like *Cotter* v. *Boston & Northern Street Railway*) there is but one cause of action and that one cause of action cannot be split so as to be the foundation of two actions of tort. The reasons were fully set forth in *Foye* v. *Patch* and in *Clare* v. *New York & New England Railroad,* and by reason of that were not repeated in *Cotter* v. *Boston & Northern Street Railway.*

In the case at bar there is no question of *res judicata.* In the case at bar the plaintiff undertook to recover in the first count for ordinary negligence and in the second count for "wilful, wanton and reckless negligence." A verdict for the defendant on the first count (of one and the same declaration) in no way precluded the plaintiff from making out a case of wilful, wanton and reckless negligence (as alleged in the second count) if in fact she could do so.

2. The defendant's next contention (as we understand it) is that, by virtue of an agreement which was made when the judge directed the verdict for the defendant on the first count, the plaintiff was precluded from maintaining the action unless she proved that some one for whom the defendant was responsible actually had intended to injure the plaintiff. Confessedly there was no evidence that any one for whom the defendant was responsible actually had intended to injure the plaintiff. On this ground the defendant contended that it was entitled as matter of law to a verdict on the second count in the case at bar. There is nothing in that contention. The whole colloquy out of which this supposed agreement arose was as follows: At the time in question counsel for the defendant said: "I am perfectly willing to concede that that verdict [the verdict directed on the first count] shall have no bearing on the question of the plaintiff's due care, but only on the nature of the defendant's fault. That is, I don't think it would be fair for me to claim anything about the plaintiff's due care. I understand that only adjudicates the nature of the defendant's fault. Is that agreeable?" To this the counsel for the plaintiff assented. There is nothing in this which means that after the verdict had been entered for the defendant on the first count the plaintiff to succeed must make out that some one for whom the defendant was responsible actually had intended to injure the plaintiff.

3. On the evidence in the case the presiding judge told the jury that to find for the plaintiff they must find in addition to the conceded facts of the case: (1) that before the accident one William Sullivan, who was a car shifter in the defendant's car barn (here in question), had been told that the defendant's iron post had become charged with electricity; (2) that he knew that people would be likely to be in the vicinity of the post; (3) that he knew that wire or similar objects had been dumped and were on the bank close to the post; (4) that he knew that people in the vicinity of the post would be likely to suffer grievous bodily injury by reason of the leaking electricity which had been stored in it; (5) that it was his duty to report that condition to his superior officer; (6) and finally that failing to report it to his superior officer the jury found that he had been guilty of reckless or wanton conduct or negligence. The evidence warranted findings in favor of the

plaintiff upon the first five of these facts. The defendant's coun-
sel has contended that even if these five findings were made a
finding could not be made that Sullivan was guilty of reckless or
wanton conduct or negligence. In support of this contention he has
argued that the plaintiff elected to go on the ground that she was
a trespasser and that no matter what the facts are a land owner as
matter of law is not bound to anticipate the presence of trespassers.
In that connection he relies on *Khinoveck* v. *Boston & Maine
Railroad,* 210 Mass. 170. There is nothing in that case which
gives support to this contention. In that case at the time of the
accident the plaintiff was on one of the tracks in the defendant's
freight yard and not in a place continually resorted to by the pub-
lic although without permission of the defendant. In the case at
bar on the contrary there was evidence "that for a long time prior
to the date of the accident children and other persons living in the
vicinity of the defendant's car barn had, without the defendant's
permission, but with the knowledge of the division superintendent
Barnes and of some of the other persons employed in and about
the car barn and yard," used the path used by the plaintiff at the
time here in question. This coupled with evidence of Sullivan's
having been continually about the premises warranted a finding
that he ought to have anticipated that many persons including
those who admitted that they were trespassers would use the path.
We are of opinion that if the jury found these five facts they were
warranted in finding the sixth and that if they found the sixth the
plaintiff had proved the second count of her declaration.

In addition the jury answered in the affirmative the two ques-
tions put to them by the presiding judge: "1. On September 1,
1909, and prior to the accident to the plaintiff, was information
conveyed by any person to Sullivan that the trolley pole at or
near which the plaintiff was subsequently injured was charged
with electricity, or that electricity was leaking or escaping there-
from? 2. If the jury believes that prior to the accident to the
plaintiff on September 1, 1909, information was conveyed to the
Sullivan referred to in the testimony of several of the plaintiff's
witnesses that the trolley pole was in a dangerous condition, did
Sullivan, before the accident, believe that said pole was in a dan-
gerous condition?" We are of opinion that these answers were
warranted by the evidence.

In support of his contention to the contrary the defendant has argued that there was no direct evidence that Sullivan knew that the hay wire was heaped up near to the post. But there was circumstantial evidence warranting a finding to this effect. The defendant's counsel contends that there was not. In support of that contention he has relied upon this statement in the bill of exceptions: "There was evidence from which the jury might have found that some wire had been on the bank in the general vicinity of the pole for a considerable time before the accident; but whatever the particular position of said wire was at the time of the accident, there was no evidence that it had been in that particular position earlier than the day of the accident." But it is also stated in the bill of exceptions that: "The plaintiff's claim was that the wire had, prior to the accident, been thrown out of the car barn yard as rubbish by employees of the defendant, and that at the time of the accident it lay where it had originally been thrown, and some evidence was admitted from which the jury might have found this to be the fact." This last statement in the bill of exceptions is prefaced by these words: "On the questions where said loose wire came from, what particular position it was in at the time of the accident, . . . there was some conflict of claims and of testimony." Taking these two statements together the bill of exceptions must be construed to state that there was no direct evidence that the particular position of the wire on the day of the accident had been its position earlier than the day of the accident, but that there was circumstantial evidence that on the day of the acident the wire lay where it had originally been thrown out. On this state of the evidence a finding was warranted that the condition of affairs on the day of the accident had existed before. In addition there was evidence that it had existed several years before. We are of opinion therefore that there was evidence that this condition of affairs had existed for several years and that Sullivan was continually on and about the premises.

Again it is urged that there is no evidence that Sullivan was in charge of the car barn in question. At the former trial of this case (218 Mass. 76) the plaintiff made out a case on the ground that he was. But in the case at bar the plaintiff did not rely upon that ground in making out her case. On the contrary the plaintiff relied upon the fact that it was the duty of Sullivan, in case a

dangerous condition came to his knowledge, to report that fact to his superior officer. That it was his duty to do so was testified to directly by him and by the superior officer in question.

4. Before the arguments to the jury began the counsel for the defendant said to the presiding judge that it was embarrassing to take exceptions during the argument of counsel and further "If counsel undertakes to pass outside the limit set by the court, which is so very broad, I want a right to except to anything outside those boundaries. Does your Honor think I should wait until he gets through, or interrupt him? I don't want to be interrupting, and have it said I am violating the rules of the court." To this the presiding judge said: "I suppose that there will have to be an interruption," but that he would ask counsel to do the best he could to keep within the bounds, and the defendant's counsel said: "I propose to have all the legal rights I have in this case. If you argue outside the rules which the judge has laid down, I shall feel at liberty to interrupt and take an exception." During the course of the plaintiff's argument to the jury the defendant's counsel "not in the hearing of the jury, appealed twice to the court at the bench to stop" the argument which the plaintiff's counsel then was making. At one of these times the presiding judge said in the presence of the jury that the argument was not what he should leave to the jury; to which the plaintiff's counsel answered "May I just say this, judge, because I shan't go an eighth of an inch off —," and to this the judge said, "An exception is open, if you do." On the conclusion of the arguments and before the judge made his charge to the jury the counsel for the defendant stated to the presiding judge that twice during the plaintiff's argument he had notified the court that an argument was being made which was not within the lines on which the judge had told the counsel he should leave the case to the jury and the counsel then added that he then "begged an exception if it were not stopped, and the reason I did not interrupt was that I had before the argument said that I did not intend to, and I understood that the court had relieved me from the necessity of interrupting counsel's argument." After something more of the same kind had been said the presiding judge said that he should rule that the matters complained of had nothing to do with the case, to which the defendant's counsel said: "That argument was made, and I haven't had a fair trial in this court, and the

case should be continued now on that ground." To this the presiding judge made no answer except that he should charge the jury at two o'clock. Nothing more was then said by the counsel for the defendant. The argument which the defendant thus objected to was for the most part not an improper one. But in one respect the plaintiff's counsel went too far. In effect he asked the jury if on the evidence Barnes and Lang (Sullivan's superior officers) did not know of the hay wire being in contact with the iron pole or post. It was conceded (and the presiding judge so ruled) that on the evidence the plaintiff had not made out a case unless she proved that Sullivan knew of the condition around the iron pole or post.

When the judge charged the jury he did not specifically refer to the plaintiff's argument which was complained of by the defendant, but he did charge the jury on grounds which excluded the materiality of the argument as to the knowledge of Barnes and Lang. On the conclusion of the charge the defendant's counsel said: "I should like to call attention to the objection I made to the plaintiff's argument, and ask you to instruct the jury to disregard the portion of the argument to which I objected, or otherwise save my exception; that Lang might have known or Barnes might have known." In what he said to the jury in his charge the judge had covered this point. The defendant was not entitled to have it specifically called to the attention of the jury at this stage.

5. One of the witnesses who testified that he told Sullivan that the pole in question was charged with electricity was asked on cross-examination by the defendant's counsel what Sullivan said to him at that time and he answered, "'Get out of here; you are crazy,' — that those are the words Sullivan said." Thereupon the defendant's counsel asked the witness, "Do you mean he did not believe you?", to which the witness answered, "Yes." The plaintiff's counsel immediately said "I object. I ask to have that stricken out." It was stricken out, and the defendant's counsel took an exception. This exception must be overruled. The defendant was entitled to the evidence of the manner in which Sullivan accepted the information (which the witness said he gave him) and he got that when the witness testified that Sullivan said, "Get out of here; you are crazy." He was not entitled to ask the witness what inference he (the witness) drew from that remark and there

is nothing in the two cases relied on by the defendant (*Viles* v. *Waltham*, 157 Mass. 542, and *Culver* v. *Dwight*, 6 Gray, 444) which gives support to his contention that he was entitled to the witness's inference upon that matter.

6. We have examined all the cases relied on by the defendant and find nothing to add to what has been said as to those referred to above.

*Exceptions overruled.*