OSCAR GUBELMAN et al., Copartners under the Firm
Name of KNAUTH, NACHOD & KUHNE, Respondents,
v. ANDS KOCH, INC., Appellant.

Evidence — action for damages for failure to fulfill an alleged
contract made by a firm of brokers representing defendant —
when evidence that the brokers had acted as agents for
defendant on other occasions incompetent — when evidence of
telephone conversation by broker with president of defendant
to prove contract incompetent.

1. Where, in an action against defendant, a corporation, to recover
damages because of its alleged failure to fulfill a contract made by it,
through a firm of brokers, with plaintiffs for the purchase of a certain
number of marks for future delivery in Berlin, the president of defend-
ant denied that he had ever authorized a purchase of marks upon
such terms as are claimed, and the evidence showed that if the brokers
for defendant were authorized to make the purchase it was by special
authority restricted to this particular transaction, the admission of evi-
dence, offered to support this claim, that the same brokers had acted
as agents for defendant on other occasions was incompetent to estab-
lish the relation of principal and agent between defendant and the
brokers, and inadmissible for that purpose.

2. It was erroneous, also, to permit an employee of the former
brokers, after testifying that on one occasion he secured defendant's
president on the telephone, which he then handed to the broker, to
testify that he then heard the broker say, in substance, that he had
bought of plaintiffs the marks for future delivery and that defendant
should confirm this purchase. No other evidence of this conversation
was given; there was no evidence of the entire conversation of which
the testimony given would be corroborative and no evidence of what
defendant's president said in reply to the broker.

Gubelman v. Koch, Inc., 200 App. Div. 894, reversed.

(Argued December 12, 1922; decided January 9, 1923.)

APPEAL, by permission, from a judgment of the Appellate
Division of the Supreme Court in the first judicial depart-
ment, entered February 7, 1922, unanimously affirming a
judgment in favor of plaintiff entered upon a verdict.

Henry W. Bridges and Louis J. Naftalison for appellant.
The evidence of the witness Frankel as to one side of the

telephone conversation was plainly incompetent and constitutes reversible error. (*Hancock* v. *Hartford Ins. Co.*, 81 Misc. Rep. 162.) The admission of evidence as to other and totally different transactions was error. (*Bonynge* v. *Field*, 81 N. Y. 159; *Arnold* v. *Farmers Fire Ins. Assn.*, 116 App. Div. 60; 197 N. Y. 538; *Lichtenhein* v. *Fisher*, 6 App. Div. 385; *Tallman* v. *Kimball*, 74 Hun, 279; *Abrams* v. *Manhattan Consumers' Brewing Co.*, 90 N. Y. Supp. 425.)

*Otto C. Sommerich* and *Maxwell C. Katz* for respondents. Evidence that other transactions were closed for the purchase of marks by the defendant through the same brokers and through bought and sold notes and paid for by the defendant was admissible. (*Conover* v. *Ins. Co.*, 1 N. Y. 290; *Olcott* v. *Tioga Railroad Co.*, 27 N. Y. 546; *Beattie* v. *Delaware, L. & W. R. Co.*, 90 N. Y. 643; *Wood* v. *Auburn R. R. Co.*, 8 N. Y. 160.) The testimony of the witness Frankel as to what was said by Konrad, the deceased broker, after turning over the telephone to Konrad subsequent to his establishing the telephone connection with defendant's president whose voice he recognized, was clearly admissible. (*Hancock* v. *Hartford Ins. Co.*, 81 Misc. Rep. 162; *Miles* v. *Andrews*, 153 Ill. 262; *Snively* v. *Colburn*, 78 Ill. App. 93; *Greenberg* v. *Greenberg*, 133 N. E. Rep. 18; *McCarthy* v. *Peach*, 186 Mass. 67; *J. P. Garage* v. *Woodside Motor Livery*, 236 Mass. 541; *L. & L. & G. Ins. Co.* v. *Hinton*, 116 Miss. 754; *Kent* v. *Cobb*, 24 Col. App. 264; *Dannemiller* v. *Leonard*, 15 Ohio C. C. 686; *State* v. *Freddy*, 117 La. 121.)

Hiscock, Ch. J. This action was brought to recover damages because of an alleged failure on the part of the defendant to fulfill a contract made by it with plaintiffs for the purchase of 500,000 marks for future delivery in Berlin. The contract, as alleged by plaintiffs, was made through a firm of brokers and the substantial controversy on the trial was over the question whether

the brokers were authorized by defendant to make the contract which was sued upon, and the settlement of this controversy was made troublesome for the plaintiffs by reason of the fact that the broker who acted in the matter had died before the trial.

Both counsel expend considerable effort in the argument of the question whether there was any evidence to support plaintiffs' claim, but inasmuch as the judgment in favor of plaintiffs has been unanimously affirmed this labor of course is entirely futile. There were taken in behalf of defendant, however, some exceptions to the admission of evidence which we think present for our consideration errors calling for the reversal of the judgment.

Defendant's president, by whom it was asserted the brokers were authorized to make the purchase, denied that he had ever authorized a purchase of marks upon such terms as are claimed. Concededly upon the evidence, if the brokers were authorized to make this purchase it was a special authority restricted to this particular transaction and I am unable to see how evidence that the same brokers had acted as agents on other occasions tended legally to establish the relation of principal and agent on this occasion. Nevertheless, such evidence was admitted over proper objection and exception and the evidence was not harmless. It was just the kind of inadmissible evidence that was calculated improperly to affect the minds of a jury.

There was a second line of evidence which I think was also incompetent. An employee of the former broker was permitted to testify that on one occasion he secured defendant's president upon the telephone, which he then handed to the broker, and he was allowed to repeat in evidence what he there heard the broker say. The substance of the statements which the broker made was that he had bought of the plaintiffs 500,000 marks for future delivery and that defendant should confirm this

purchase. No other evidence of this conversation was given than that which has been stated; there was no evidence of the entire conversation of which the testimony given would be corroborative and no evidence of what defendant's president said in reply to the broker. Under such circumstances I fail to see how this evidence was at all competent.

This was not a transaction where there was any requirement of notice, as such, by the broker to his principal. The only object of the evidence was to show authority on the part of the broker in making the transaction and the only way in which this result could be accomplished would be by showing what defendant's president said in answer to his report. If he assented to the action of the broker that was important as tending to prove authority; if he repudiated the transaction the statements of the broker were absolutely nugatory and evidence of them was incompetent. The materiality of a statement by one party in the presence of another that the latter owes the former a thousand dollars depends upon the response which is made. Mere assertions are not the equivalent of obligations. As has been stated there is no evidence which course the defendant's officer pursued assuming that the conversation took place as detailed by the witness, which the officer denies. This evidence also was of a harmful character and if incompetent, as I think it was, furnishes a sufficient ground for the reversal of the judgment.

The cases cited in behalf of respondents in support of the admission of this evidence are far afield. In *Miles* v. *Andrews* (153 Ill. 262) the evidence of the statements of a party at one end of the telephone line were allowed on the theory that what he said tended to show by way of admission that certain notes which his principals were trying to enforce were based upon an illegal consideration. No attempt was made to utilize his statements as binding the party at the other end of the line. In *Greenberg* v.

*Greenberg* (133 N. E. Rep. 18) the witness listened to what was being said by both parties to the conversation and, therefore, she was permitted to testify.  In *McCarthy* v. *Peach* (186 Mass. 67) and *Jamaica Pond Garage, Inc.,* v. *Woodside Motor Livery, Inc.* (226 Mass. 541) a witness had testified to the entire conversation conducted by telephone and the witness whose evidence was challenged was permitted to testify in corroboration of the underlying testimony that he heard so much of said conversation as took place at one end of the telephone line.

In this case if some witness had testified to the entire conversation between the broker and defendant's officer it would of course be competent for a witness who heard even one side of the conversation to testify to what was said as corroborative of the first witness.  As has been stated, however, that is not the situation at all, but we simply have an attempt to bind a person at one end of the line by showing what was said at the other end without any testimony in respect of the response which was made.

For these reasons I think the judgment should be reversed and a new trial granted, costs to abide event.

HOGAN, POUND and CRANE, JJ., concur; McLAUGHLIN, J., concurs on second ground stated; CARDOZO and ANDREWS, JJ., dissent.

Judgment reversed, etc.