LISETTE V. RUEGG, as Administratrix of the Estate of ERHART RUEGG, Deceased, Respondent, v. FAIRFIELD SECURITIES CORPORATION, Appellant.

Argued February 21, 1955; decided March 11, 1955.

314

*Henry J. Bogatko, John I. O'Neill* and *William M. Keegan* for appellant. I. Mr. Korn's testimony as to the statements he overheard made into the telephone by Mr. Arnold was inadmissible. (*Ruppert* v. *Brooklyn Heights R. R. Co.,* 154 N. Y. 90;

*People* v. *Kennedy,* 32 N. Y. 141; *People* v. *Harris,* 136 N. Y. 423; *Ottida, Inc.,* v. *Harriman Nat. Bank & Trust Co.,* 260 App. Div. 1008; *Mankes* v. *Fishman,* 163 App. Div. 789; *Gubelman* v. *Ands Koch, Inc.,* 234 N. Y. 425.) II. The documents offered at the trial raise a doubt as to whether defendant ever had knowledge of the forbearance or that plaintiff or its attorney ever relied on such knowledge of defendant. III. The letter of March 4, 1949, was not in and of itself an enforcible contract. It lacked both consideration and mutuality. (*Schlegel Mfg. Co.* v. *Cooper's Glue Factory,* 231 N. Y. 459.) IV. The refusal of the trial court to rule upon the admissibility of the evidence and in reserving decision until after the end of the trial was, therefore, reversible error. (*Lathrop* v. *Bramhall,* 64 N. Y. 365; *Sharpe* v. *Freeman,* 45 N. Y. 802.) V. The trial court committed error in allowing plaintiff to reopen her case, after both sides had rested, to offer additional and new evidence. (*Marshall* v. *Davies,* 78 N. Y. 414.)

*Harold H. Corbin, Charles Korn, Marvin S. Machson* and *Samuel Statler* for respondent. I. There was ample consideration for defendant's promise. (*Richardson* v. *Carpenter,* 46 N. Y. 660; *Read* v. *Morford,* 203 App. Div. 166; *Bank of Troy* v. *Topping,* 9 Wend. 273, 13 Wend. 557; *Belknap* v. *Bender,* 75 N. Y. 446.) II. The trial court was right in finally holding that Korn's recital of what Arnold said was " clearly " admissible provided Arnold was talking with Still for it was original evidence of notice to and knowledge of defendant and was not hearsay. (*People* v. *La Barbera,* 274 N. Y. 339; *Gubelman* v. *Ands Koch, Inc.,* 234 N. Y. 425.)

DESMOND, J. This suit was brought because of defendant's default in carrying out this promise:

" March 4th, 1949

Mr. Erhart Ruegg
24 West 40th Street
New York City, New York

Dear Sir:

At the request of Mr. William S. Arnold, we hereby agree to pay to you, for the account of Mr. Arnold, the sum of Twelve Thousand ($12,000.00) Dollars within thirty (30) days after certain Bonds No. 16-2548/9-47

issued by the United States Fidelity and Guaranty Company for William S. Arnold and John Stum, have been cancelled and all the collateral now pledged to secure said bonds has been released by the United States Fidelity and Guaranty Company and returned to our affiliated company.

Very truly yours,

FAIRFIELD SECURITIES CORPORATION

By          RALPH E. STILL

*Vice-President* "

There is no dispute as to the execution of that writing, or as to the signer's authority to execute it on behalf of the corporate defendant, or as to defendant's failure to pay. The sole attempted defense at the trial was that plaintiff's proof did not establish a consideration for making the promise, and that question in turn boiled down to a dispute as to whether it was sufficiently proven at the trial that a certain telephone conversation testified to by one Korn, attorney of record for plaintiff-respondent, was actually a conversation had with Ralph E. Still, vice-president of defendant, who signed the letter sued upon.

In earlier litigation in this cause (see 281 App. Div. 1023), it had been determined that the complaint's allegations meant " that defendant promised to pay in consideration of plaintiff's intestate's forbearance and that there was such forbearance or reliance on the promise ", and that this sufficiently pleaded a cause of action. In other words, it was substantially agreed, when the case came to trial, that the only dispute was as to whether any consideration, for the promise, ran from plaintiff's intestate to defendant, and it was further substantially agreed between the parties at the trial that plaintiff's intestate's promise to forbear entering judgment against one Arnold would be sufficient consideration for the agreement in the letter, provided defendant knew that such was the purpose of the letter. Thus, the trial concerned itself with the fact question as to whether defendant's officer Still did know that the letter signed by him was being given to procure such forbearance by plaintiff's intestate. That, in turn, resolved itself into a trial of the issue as to whether there was a telephone conversation in which Arnold told defendant's vice-president Still that the letter was being given in return for,

and to obtain, plaintiff's intestate's forbearance from entering judgment against Arnold in a suit to recover a certain sum owed by Arnold to plaintiff's intestate, all of which we will explain more fully hereafter. So, the only real contest on the trial was as to whether lawyer Korn's testimony, as to a phone call made by Arnold from Korn's office, described a telephone call to Still, who did not testify on the trial, but part of whose examination before trial was read by plaintiff. The defense contention is, and was, that, since Korn heard only one end of the call (that is, heard Arnold talking) and since Korn did not have direct knowledge as to who was on the other end of the line, therefore (argues defendant), there was no proof that Arnold was talking to Still when Arnold told somebody over the telephone that the letter sued upon was to be given and taken in return for plaintiff's intestate's forbearing to enter judgment against Arnold. The Trial Justice (jury trial, as well as formal findings, was waived) had difficulty with this question, but in the end he took the proof over objection, and reserved decision as to whether or not Korn's testimony on this point was admissible to prove a telephone talk by Arnold with Still. Arnold was not a witness. The trial court ultimately held that Korn's testimony did not sufficiently connect Still with Arnold's telephone conversation to which Korn had testified, and that the other evidence in the case, to which we will refer, did not supply this deficiency. Therefore, held the Trial Justice, plaintiff failed to prove her cause of action since the letter of agreement itself did not mention consideration and there was insufficient proof, so that court held, that the telephone conversation gave notice to Still, defendant's vice-president, that the letter which he was about to sign was being given in consideration for an agreement by plaintiff's intestate not to enter judgment against Arnold. Judgment of dismissal of the complaint on the merits was entered on the trial court's decision.

The Appellate Division unanimously reversed, and, in its judgment of reversal, specifically reversed the lower court's finding, stated in the latter's opinion, that plaintiff had failed to prove that defendant knew that its promise to pay would be used to procure forbearance. In lieu of that finding, the Appellate Division made new findings, as contained in its opinion, that the conversation which attorney Korn listened to was by Arnold with defendant's officer Still. Judgment reversing the judgment

below and awarding plaintiff the sum sued for, with interest and costs, was entered. Before analyzing the proof, we will deal with a jurisdictional question which might be thought to be in the case. It is not entirely clear, especially since there was a waiver of formal findings at the trial, whether the trial court made a finding of fact when he said that it was not proven that Still was on the other end of the telephone conversation, or whether he was ruling, as matter of law, that the testimony he took on this subject was not proof of that fact. The Appellate Division treated his ruling as a finding of fact, reversed it and made its own contrary finding. The Appellate Division, as stated in its opinion, and for reasons which we will state hereafter, thought that it was proven almost conclusively and that the '' circumstances compel the irresistible inference '', that the telephone conversation which Korn listened to was, in fact, a telephone conversation between Arnold and Still. Really, it does not make any great difference whether the Appellate Division, in making its new findings and conclusions, was dealing with contrary findings of fact below since the Appellate Division did make it clear that it was holding, not only that Korn's testimony was admissible as to this conversation, but holding also that the strong preponderance of evidence or weight of evidence favored, if it did not compel, a finding that Still was on the other end of the telephone conversation. The Appellate Division, under these circumstances, had the right to make its own findings of fact, whether or not a contrary finding of fact had been made by the trial court (see *Bernardine* v. *City of New York*, 294 N. Y. 361).

We are persuaded, as was the Appellate Division, that this record is sufficient to prove that Arnold was talking to Still when Arnold stated, in a telephone conversation made in Korn's office and in Korn's presence, that the letter which Still was about to sign, and did sign, was being given in return for plaintiff's intestate's forbearing to make use of a confession of judgment which plaintiff's intestate had received from Arnold. If we are correct in that, it is the end of the case, and the judgment appealed from is correct.

There is little dispute as to the facts. In 1948, one William S. Arnold, the nature of whose business and the nature of whose connection with either plaintiff's intestate or defendant is not

spelled out in the record, became indebted to plaintiff's intestate by reason of a $25,000 loan to Arnold from plaintiff's intestate. Arnold was unable to pay the debt, although he tried to liquidate it, in part or in full, by turning over or promising to turn over, to plaintiff's intestate, proceeds from the sale of a yacht belonging to Arnold. But the yacht's sale proceeds left, it seems, a substantial balance unpaid from Arnold to plaintiff's intestate on the debt. Plaintiff's intestate, Arnold's creditor, died in March, 1950, but a year before that, in March, 1949, he had brought a suit against Arnold on the $25,000 indebtedness and Arnold had signed a stipulation of facts, and a concession that he was indebted to plaintiff's intestate for the full sum of $25,000 with interest and that he had no defense thereto, the same document containing and being a confession of judgment and a consent to the entering of judgment without notice. After the death of Ruegg, his wife, who is the plaintiff here, took over his estate, including this debt, as administratrix, and brought the present suit in October, 1952.

All of the above is undisputed. The trial really concerned events of March 3 and March 4, 1949, while Ruegg was still alive, but after he had turned over the unpaid note to Charles Korn who was decedent's attorney and is now the attorney for his estate. Korn testified that, on March 3, 1949, Arnold, the debtor, came to Korn's office and that there was then and there a discussion between Korn, the creditor's attorney, and the debtor Arnold, about the unpaid note, during which discussion Arnold not only accepted service of the summons and complaint in the suit on the note and gave Korn the confession of judgment above described, but also, according to Korn's undisputed testimony, made an arrangement whereby $12,000 (which was, apparently, computed as the balance after the deduction for the estimated value of the boat security) would be paid by defendant Fairfield Securities Corporation, the relations of which corporation with Arnold were, so Korn testified, explained to Korn by Arnold but are not described in the record. It seems from documentary evidence that Arnold and others were defendants in a mail fraud criminal prosecution brought by the United States in a Federal court in Michigan, and that in March, 1949, this criminal prosecution was pending, that the United States Fidelity and Guaranty Company, not a party hereto, had put up bail for Arnold in that

cause, that some entity called the Beek Corporation had put up collateral with the United States Fidelity and Guaranty Company, and that defendant Fairfield and Arnold had some unexplained interest in or connection with that collateral. Still, who signed the letter sued on here, was an officer of the Beek Corporation as well as of defendant Fairfield. Now, back to Korn's testimony. He said that Arnold, after signing the confession of judgment, etc., promised Korn that he (Arnold) would bring to Korn the next day (which would be March 4, 1949) an unconditional promise from defendant Fairfield to pay $12,000 to Korn, as attorney for plaintiff's intestate, when the bail bonds should be cancelled and the collateral returned. Korn testified that Arnold made no telephone call from Korn's office on March 3d, but left after making an appointment to come back to Korn's office the next day. According to Korn, Arnold did come back to Korn's office the next day, bringing with him a paper, not the letter in suit, which had been signed by Still as vice-president of defendant Fairfield and a copy of which first letter (not the one sued upon) is in the record as an exhibit. That copy was produced from defendant's own files and its authenticity is unquestioned. Attorney Korn testified that he, after looking over that letter, told Arnold that the form of the letter was not satisfactory to Korn and that certain changes would have to be made. Thereupon, according to Korn, Arnold made, from Korn's office, the telephone conversation which had to be established here in order to prove the element of consideration. Korn testified that he heard Arnold's end of the conversation, but of course did not hear the voice of, or what was said by, the person at the other end. Korn testified that Arnold stepped to a telephone right alongside Korn's desk, that Arnold opened a little notebook wherein Korn saw the name of '' Ralph Still '' and an address on Park Avenue, and a telephone number which Korn did not remember at the trial. Korn testified that Arnold, with the little book in his hand, dialed a phone number and began talking to someone on the other end, after first announcing that he was '' Bill Arnold '' and asking for Still. Korn testified that Arnold told the person on the other end that Korn was not satisfied with the form of the letter, in that Korn did not want any reference therein to a deduction of premiums from the collateral, that Korn objected to the reference in the letter to the value of the

collateral, and that Korn objected, as unnecessary, to the provision made at the lower corner of the letter for a signing by plaintiff's intestate. Korn swore that, in that phone conversation, Arnold told the person at the other end, who Korn assumed was Still, that Korn had told Arnold that if Korn did not get the letter in the form Korn wanted it, Korn would enter judgment against Arnold on the confession, but that if the letter were delivered in the form requested by Korn, Korn would withhold entry of judgment. This testimony (once we get past the question as to whether Still was listening at the other end of the telephone) would amount — and this is not disputed — to sufficient proof of consideration in that Still was being told the purpose for which the letter was being given and the benefits to accrue to Arnold from the giving of the letter. Korn testified that, at the end of the telephone conversation, Arnold said to the person at the other end '' I will be over right away ''. Korn's further testimony was that on March 7, 1949, a few days later, Arnold came back to Korn's office, bringing with him the new letter which is here sued upon. Comparing the two letters shows that the matters in the first letter to which Korn objected are stricken out on the copy which Still produced of that letter, and that the second letter embodies Korn's terms. Plaintiff read into evidence, at this trial, part of an examination before trial of Still, in which Still testified that he signed the letter sued upon, that he had previously signed the earlier letter, copy of which he produced, that he (Still) had prepared the earlier letter from Arnold's instructions, but subsequently destroyed the original of it, and that after the first letter was returned by Arnold to Still, he (Still) made the changes which Arnold had requested of him in a telephone conversation, and signed the new letter. It is most significant that Still, who did not testify at the trial even after the court had admitted the telephone matter in evidence, said in his examination before trial that he was the only person who represented defendant Fairfield in the matter, and he (Still) testified flatly in that examination before trial that he had only one telephone conversation with Arnold about the matter. At some points in his examination before trial, Still said that he assumed that the one telephone call from Arnold to Still came from Arnold in the office of plaintiff's intestate, but Still made it clear that he was merely assuming that Arnold

was calling from the office of Ruegg and that he actually did not know whether the Arnold call was from Ruegg's office or from the office of Ruegg's attorney (that is, Korn's office). The substance of Still's examination before trial was, therefore, that he prepared the first letter, at the request of Arnold, that he had one phone call from Arnold in which Arnold told him that the letter was not satisfactory to Korn, that Arnold brought the first letter back, that a new letter was prepared with the changes described by Arnold over the telephone, and that Still then signed the letter here in suit. As we have pointed out, Still was not a witness on the trial (although he was then president of defendant) and there is nothing in his examination before trial, as it appears in this record, to show whether or not he was asked whether he actually heard, over the telephone from Arnold, the notification that this letter was being given to prevent the entry of judgment, but Korn's positive testimony to that effect, in no wise disputed or impeached by anything, is certainly not improbable, was believed by the Appellate Division and apparently by the trial court, and is sufficient in law as proof that this information was in fact given by Arnold to Still. When the fact of the telephone talk has been so conclusively proven, and there is no reason to disbelieve it, there would be every ground for overlooking any technical objection to the receipt of such testimony. However, we do not think any such technical objection was valid. We think that the identity of Still as the other person to the telephone conversation was proven by evidence substantial and even, as the Appellate Division said, compelling. There is, too, a little more proof (marked for identification), in itself of small importance, that the one telephone call which Still testified to receiving came from Korn's office on March 4th. That proof consists of an office memorandum made by Korn's secretary at Korn's office at 11:05 A.M. on March 4th, at a time when Korn was absent from the office. It purports to report a phone call to Korn's office from Arnold taken down by Korn's secretary and stating " The letter [I] promised you will not be ready before noon ". There is more in the memorandum indicating that Arnold had told Korn's secretary that if Korn should wish to verify the financial responsibility of defendant Fairfield, Korn should telephone to a certain named person. This memorandum was admissible, under section 374-a of the Civil Practice Act, as

made in the regular course of business, and it is some corroboration for Korn's testimony that Arnold was expected to be at Korn's office that afternoon and was there that afternoon in reference to this very same matter. The trial court, in ruling out the testimony of the telephone call (or refusing to accept it as evidence) properly disposed of *Gubelman* v. *Ands Koch, Inc.* (234 N. Y. 425), since that case merely held that the contents of a telephone conversation cannot be proven by showing what one person said without proving what the other person said. It did not make any difference in this instance what Still said in answer to Arnold. All plaintiff was trying to prove was that Arnold said certain things to Still which informed Still as to the nature of the consideration for the letter which Still was about to sign.

The consideration for the letter was afterwards forthcoming in fact, since, up to the time Ruegg died on March 2, 1950, almost a year after the delivery of the letter, judgment had not been entered and it was only after his death that any attempt was made to collect on the letter promise. In the meantime and by the end of 1949, apparently, the bail bond collateral held by the bonding company and worth far more than $12,000 had been released by the bonding company to defendant Fairfield, except some $3,300 in cash, but defendant Fairfield paid nothing to Ruegg or his estate. It appears, although there is no express finding on this and it is not essential for the decision of this case, that when the letter sued upon was written, Fairfield had received a pledge, presumably from Arnold, of $12,000 worth of securities. It was also shown on the trial that at the time the letter sued upon was given, Fairfield owed Arnold at least $24,000. All of this tends to explain why defendant Fairfield, through Still, was willing to sign the letter sued upon.

The judgment should be affirmed, with costs.

CONWAY, Ch. J., DYE, FULD, FROESSEL, VAN VOORHIS and BURKE, JJ., concur.

Judgment affirmed.